IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MARCELLUS LEWIS, JR.,

      Plaintiff,                          No. CIV S-07-0007 EFB

    vs.

MICHAEL J. ASTRUE,             <u>ORDER</u>
Commissioner of Social Security,

      Defendant.
_____/

      Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"). For the reasons that follow, plaintiff's motion for summary judgment is granted, the Commissioner's motion for summary judgment is denied, and this matter is remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings as directed in this opinion. The Clerk is directed to enter judgment for plaintiff.

**I. BACKGROUND**

      Plaintiff, born April 22, 1961, applied for disability benefits under Title XVI of the Act on April 29, 2004, alleging disability since March 5, 2004, due to "bad back/disc, problems in right arm," right shoulder pain, back pain, pain on the left side from the hip down, left arm pain, groin infection, diabetes, and numbness in hands and fingers. Administrative Record ("AR") 13,

1

35, 37, 44, 59, 60, 80. The application was denied initially and upon reconsideration. AR 35-41, 44-48. On August 23, 2006, following a hearing before Administrative Law Judge ("ALJ") Theodore T.N. Slocum, plaintiff was found not disabled.[1] AR 12-23.

At the May 18, 2006, hearing and in the subsequent written decision, the ALJ took note of plaintiff's previous application for disability benefits. Plaintiff's previous application, filed on May 13, 2002, alleged disability since June 1, 1995, in connection with upper and lower extremity nerve injuries. AR 30, 32. That application was denied initially and upon reconsideration. The same ALJ presided over the subsequent hearing, and issued a March 4, 2004, decision finding plaintiff not disabled. AR 27-31. The determination of non-disability

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401, *et seq*. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. §§ 1382, *et seq*. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) and 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. *See* 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 and 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. *Bowen*, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. *Id.*

2

was affirmed on appeal by a federal magistrate judge on May 18, 2005, thereby making the March 4, 2004, decision the final decision of the Commissioner with regard to the 2002 application. AR 12.

With regard to the March 5, 2004, application, the ALJ again found that plaintiff was not disabled. AR 12-23. In his written decision dated August 23, 2006, the ALJ applied Acquiescence Ruling 97-4(9), which directs the Commissioner to apply a presumption of continuing nondisability where a claimant files a subsequent claim for benefits following a prior denial by an ALJ. *See* Acquiescence Ruling 97-4(9). "A claimant may rebut the presumption by showing a changed circumstance affecting the issue of disability with respect to the unadjudicated period," such as a change in his age category under 20 C.F.R. § 416.963, an increase in the severity of his impairments, the alleged existence of new impairments not previously considered, or a change in the criteria for determining disability. *Id.*

The ALJ found that there had been no change in circumstances with respect to plaintiff's functional abilities from the previous decision, despite that the existence of new medical evidence in the record. AR 13. He concluded that plaintiff was not disabled and retained the ability "to perform work that exists in significant numbers in the national economy." *Id.*

Specifically, the ALJ made the following findings:

1. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

2. The claimant's cervical degenerative disc disease, mild degenerative disc disease of the lumbar spine, diabetes mellitus and he is [*sic*] status post surgery on the left elbow are considered "severe" based on the requirements in the Regulations 20 CFR § 416.920(c).

3. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

4. The undersigned finds the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.

> 5. The claimant has the residual functional capacity to lift and carry 20 pounds occasionally and 10 pounds frequently. He can stand and walk four hours during an eight-hour day and sit for at least six hours in an eight-hour day. The claimant could frequently kneel, climb, balance, crawl, stoop and crouch. The claimant can perform frequent reaching, handling and manipulation with the left upper extremity. He must also avoid concentrated exposure to cold and hot temperatures.
>
> 6. The claimant is unable to perform his past relevant work (20 CFR § 416.965).
>
> 7. The claimant is a "younger individual between the ages of 45 and 49" (20 CFR § 416.963).
>
> 8. The claimant has a "high school (or high school equivalent) education" (20 CFR § 416.964).
>
> 9. The claimant has no transferable skills from any past relevant work and/or transferability of skills is not an issue in this case (20 CFR § 416.968).
>
> 10. The claimant has the residual functional capacity to perform a significant range of light work (20 CFR § 416.967).
>
> 11. Although the claimant's exertional limitations do not allow him to perform the full range of light work, using Medical-Vocational Rule 202.21 as a framework for decision-making, there are a significant number of jobs in the national economy that he could perform. Examples of such jobs include work as a skip tracer (DOT #241.367-026), bus monitor (DOT #372.667-042) and agricultural jobs (DOT# 521.687-086).
>
> 12. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR § 416.920(g)).

AR 22.

On October 27, 2006, the Appeals Council denied plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner. AR 4-6.

## II. ISSUES PRESENTED

In his motion for summary judgment, plaintiff essentially alleges four errors in the Commissioner's decision. First, he alleges unprofessional behavior by the ALJ during the

4

hearing that he claims deprived him of a fair hearing. Second, he alleges that the ALJ failed to properly evaluate the medical opinions in the record. Third, plaintiff alleges that the ALJ failed to credit his testimony without adequate basis regarding the nature and extent of his pain and functional limitations. Finally, he alleges that the ALJ failed to include all of his functional limitations in the hypothetical posed to the vocational expert at the hearing. As discussed below, the court finds that remand is required for a full and fair hearing of plaintiff's claim. Accordingly, the court does not specifically address each of the other alleged errors.

### III.  LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards are applied. *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

////

////

## IV. ANALYSIS

Plaintiff appeared at the May 18, 2006, hearing with a non-attorney representative. AR 236-38. He alleges that the ALJ's comments during the hearing revealed bias and a predisposition to rule against him, thus depriving him of a fair hearing.

Administrative law judges "are presumed to be unbiased." *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999) (citing *Schwiker v. McClure*, 456 U.S. 188, 195 (1982)). "This presumption can be rebutted only by a showing of conflict of interest or some other specific reason for disqualification." *Id*. "[J]udicial remarks during the course of a [hearing] that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not" constitute bias. *Liteky v. United States*, 510 U.S. 540, 555 (1994). Further, "expressions of impatience, dissatisfaction, annoyance, and even anger" do not establish bias. *Rollins v. Massanari*, 261 F.3d 853, 858 (9th Cir. 2001) (quoting *Liteky*, 510 U.S. at 555-56). However, judicial remarks may support a finding of bias "if they reveal an opinion that derives from an extrajudicial source; and they will do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible." *Liteky*, 510 U.S. at 555. The relevant inquiry is whether, in the context of the whole case, the ALJ's behavior was "so extreme as to display clear inability to render fair judgment." *Rollins*, 261 F.3d at 858 (quoting *Liteky*, 510 U.S. at 551)).

Here, plaintiff does not allege a conflict of interest, but rather argues that the ALJ's comments demonstrate a clear "inability to render a fair judgment." Specifically, plaintiff points to several comments by the ALJ regarding plaintiff's character and failure to find a job. For example, after questioning by the ALJ about whether plaintiff had tried to find a job, plaintiff testified that he "tried to work for Light Rail and everything else too," but that "they said . . . [he] probably wouldn't pass the physical." AR 243. Upon further questioning, it was revealed that "they" were simply employees who were not qualified to make a medical determination about plaintiff's ability to pass the physical. Plaintiff admitted he simply took "their" word for it, and

6

the ALJ responded by stating, "[a]nd you took their word.  You sound to me like you don't want to work." AR 243-44.

The ALJ made other comments in this same vein.  After receiving vague responses from plaintiff regarding his smoking habit and efforts to obtain smoking cessation education, the ALJ commented:

> You're really looking for a free ride, looking for insurance, you're looking for disability, you're looking for child support.  You're getting food stamps.  You're getting free medical at the VA Clinic.  You get free medical the Sacramento County Clinic.  You've got some kind if [*sic*] medical up in Roseville.  Why don't you just go out and look for work?

AR 252-53.

The ALJ also expressed frustration when plaintiff could not remember the last time he was examined by a doctor:

> You know, sir, you've been to one of these hearings before.  You've had an unfavorable Decision [*sic*] issued.  You've tried to appeal it.  You've reapplied.  I mean, you know how to work the disability system.  I can't understand why you say you're not prepared for this hearing, because you've even been through a prior hearing with me.

AR 254.

The ALJ also accused plaintiff of "doctor shopping" in light of his treatment at both the Veteran's Administration ("VA") hospital and the Sacramento Family Medical Clinic. AR 251. The plaintiff explained that he began going to the VA hospital because it was closer to where he was staying at the time (he was homeless) and because he had trouble finding transportation. *See id.* Plaintiff explained his transportation difficulties again when the ALJ asked him why he had an upcoming appointment at the Sacramento Family Clinic rather than the VA hospital.  AR 257.

////

////

The ALJ responded, by commenting:

> Have you just thought, you know, let's go out and get a job? A lot of us work with injuries. There are people who have served with me as ALJs, who are in their late 50's, and some of them have had one or two open heart surgeries. I've had colleagues here who have had double hip replacements, and they've worked for a long time with a single hip replacement. I have colleagues here who are in their 80's, who've had open heart surgery and continue to work. I have a colleague here who's been in the hospital several times in the last few weeks with blood clots, and he continues, as soon as he gets out fo the hospital, he's in here working or picking up work to take home. . . . *But it's a matter of attitude sir.* And I don't see – you see, this is not a welfare program that you're in here for. *This is a disability program. It's for people who want to work who may have some medically determinable impairments, which they're trying to take care of*, i.e., by following their medically recommended treatment. They're trying to make themselves well, and they're trying to find jobs. *And I don't see any job effort here since before last – even before the last hearing*. Your [sic] telling me you haven't tried to get a job since 2000. You got a denial from me in 2004, and the Federal Court just affirmed it. . . .

AR 257-58 (emphasis added).

When plaintiff testified that he could not sit for more than ten or fifteen minutes, the following curious exchange took place:

> ALJ: You've been sitting 40 minutes now. But go ahead. It's ten o'clock.
> [Plaintiff's] REP: He's gotten up a couple times during the 40 minutes, Your Honor.
> ALJ: You noticed.

AR 264.

This exchange, in combination with the other comments noted above, suggests that the ALJ was preparing a record to impugn plaintiff's credibility, which would have been effective had plaintiff's representative not challenged him. Reviewing all the above comments in the context of the whole case, and in light of applicable law, it is clear that plaintiff did not receive a fair hearing.

The ALJ's commentary at the hearing must be viewed in the context of the non-adversarial nature of Social Security hearings. "Social Security proceedings are inquisitorial

rather than adversarial. It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 110-111 (2000) (citing *Richardson v. Perales*, 402 U.S. 389, 400-01 (1971)). "The ALJ in a social security case has an independent duty to fully and fairly develop the record and *to assure that the claimant's interests are considered.*" *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (citing *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996)) (quotations omitted) (emphasis added). The *ad hominem* attacks here show the ALJ stepping from his role of developing a record and into the role of an adversary.

       The ALJ appears to have begun the process with the predicate that if plaintiff was not out looking for work, he simply was not disabled. Apart from the fact that the former does not necessarily establish the latter, the hearing record shows that the ALJ did little to assure that plaintiff's interests were properly considered, even if ultimately rejected. Instead the record show the ALJ preempted the hearing and accused plaintiff of lying, doctor shopping, and having an attitude problem. The ALJ's comments demonstrate an adversarial and antagonistic approach to plaintiff and his disability claim. They reveal more than mere impatience or frustration and demonstrate a prejudgment as to the merits of plaintiff's case and an assessment of his character. While assessing credibility of testimony regarding subjective complaints and inability to perform work functions and daily activities may well warrant consideration of evidence of "malingering" or lack of motivation, the ALJ's challenges to plaintiff's attitude and character are not presented in the context of a credibility determination as to a specific fact in issue at some step in the sequential analysis. Rather, the record reveals that the ALJ began and ended the process with the presumption that plaintiff was not willing to look for work and therefore was not disabled. Apart from the fact that the former does not necessarily establish the latter, the record shows that these prejudgments were formed even before the ALJ had the opportunity to review all the evidence in the record. *See* AR 246 (ALJ commenting that he had not yet had an opportunity to review newly admitted records).

1   More troubling, however, is the ALJ's lengthy colloquy about his colleagues and other claimants who continue to work despite injuries or medical conditions. These reference to extra-record factual information appear to have actually influenced the outcome of his decision. His comments suggest to a preconceived opinion regarding plaintiff's alleged disability that appears to have been improperly informed by "extrajudicial" sources.

Although the final written decision by the ALJ reflects a much more balanced and analytical approach to plaintiff's claim, certain mischaracterizations found therein confirm that remand for a new hearing before a different ALJ is appropriate here.

For example, the ALJ completely ignored the written observations of the physicians' assistant who treated plaintiff. Although physicians' assistants are not "acceptable medical sources" under the regulations, they are nonetheless "other medical sources" whose observations and opinions the ALJ is required to consider. *See* 20 C.F.R. § 404.1513(d). Social Security Ruling ("SSR") 06-03p explicitly provides that the "requirement to consider all relevant evidence in an individual's case record" includes "consideration of opinions from medical sources who are not 'acceptable medical sources.'" SSR 06-03p.

Here, Anita Makowski, a physician's assistant at the Sacramento Family Medical Clinic (where plaintiff received regular treatment), completed an evaluation of plaintiff's limitations on April 4, 2006. AR 176-79. She noted that plaintiff's lumbar disc protrusion and cervical degenerative disc disease resulted in pain. She opined that the pain limited his ability to walk and stand for more than an hour. AR 176. She further opined that he could sit for less than an hour, could only lift five pounds frequently, and was restricted from climbing stairs and ladders. AR 177. If the ALJ rejected these opinions and discounted the weight of the observations, he was obliged to explain why.

The government defends the ALJ's failure to consider this evidence, arguing that an ALJ need not "discuss all evidence presented," especially where it is based solely on plaintiff's subjective complaints. *See* Def.'s Cross-Mot. for Summ. J., 10:1-19 (citing *Vincent v. Heckler*,

739 F.2d 1393, 1394 (9th Cir. 1984)). The point is well-taken. However, the court in *Vincent* held that while the ALJ need not discuss all evidence presented, he nonetheless "must explain why significant probative evidence has been rejected." *Id*., at 1395 (quoting *Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981)). Here, while the opinion of the physicians' assistant may be based largely on plaintiff's subjective complaints, it is nonetheless significant, probative evidence bearing directly on the plaintiff's functional limitations, and indeed, it is the only opinion evidence in the record from a treating source. Her assessment of substantial functional limitations is significant and probative, and while the ALJ is free to discount it for particularized reasons, he is not free to ignore it.

Finally, while the ALJ's credibility determination was based, in part, on discrepancies between plaintiff's grave, subjective complaints and objective evidence tending to show only mild abnormalities, it was also based on other, seemingly improper considerations. For example, in finding plaintiff not "entirely credible," the ALJ noted that "the claimant tested positive for cocaine in January 2006," and that he "has not actively sought employment and . . . could not recall his physician's name at the hearing."[2] AR 20. Whether these are appropriate considerations in assessing a claimant's credibility depends on context and how they specifically relate to a particular fact in question. *See Orn v. Astrue*, 495 F.3d 625, 636 (9th Cir. 2007) ("factors that an ALJ may consider in weighing a claimant's credibility include reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment"). No such explanatory context was provided here. Other than impugn the plaintiff's character generally the ALJ did not address the relevant factors and explain how they relate to

---

[2] The plaintiff, while trying to recall the name of a specialist he was sent to see at a VA clinic, stated "right now I'm nervous and the name's not coming." After having previously elicited testimony from plaintiff that "I've been homeless for two years, me and my wife and my family," AR 248, the ALJ reacted to plaintiff's lack of recall with the comment "I can't understand why you're so sloppy and not keeping track of whose [sic] treating you." AR 250.

11

plaintiff's testimony as to a specific material issue.

## V. CONCLUSION

For the reasons explained above, the court finds that the ALJ's antagonism toward plaintiff colored the entire hearing process and appears to have affected his consideration of the record. Because plaintiff did not receive a full and fair hearing, this matter should be remanded to the Commissioner for a new hearing before a different ALJ. On remand, the ALJ must satisfy his or her "special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Smolen*, 80 F.3d at 1288 (quotations and citation omitted)[3].

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment is granted;

2. The Commissioner's cross-motion for summary judgment is denied;

3. This action is remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this order; and,

4. The Clerk is directed to enter judgment for plaintiff.

DATED: September 19, 2008.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE

---

[3] Given the remand for a new hearing on these grounds, the court does not reach plaintiff's other challenges to the ALJ's decision.